Good morning, Your Honors, and may it please the Court, my name is Mark Ebert, and I represent Mr. Santifer. I think that the briefs are pretty complete, so other than answering whatever questions the Court might have about them, I'd like to spend some time on Moses v. Payne, which is the supplemental authority that the State submitted last Friday on this case. One of the issues in this case is whether Mr. Santifer's right to present a full defense overrides the State's right to enforce its hearsay rule. And up until now, in a line of cases that began with Judge Candy's 1983 opinion in Perry v. Russian, and has been consistently applied both pre- and post-ADPA through Chia v. Canberra in 2004 and up until basically January of 2009, the Ninth Circuit has applied a balancing test to weigh the competing interests involved, and the district court and both parties below in this case relied on that balancing test. Now, Judge Candy's original decision applying that balancing test explicitly interprets three clearly established Supreme Court precedents, Chambers v. Mississippi, Washington v. Texas, and Green v. Georgia, as seeming to apply a balancing test, and noted that the First and Seventh Circuits also did that. So what Moses v. Payne will do if it stands, and that's not determined yet, will essentially overrule Perry and all of its progeny. And if Perry is correct, then Moses v. Payne will also conflict with clearly established Supreme Court precedent and the law of other circuits. But Moses v. Payne is not yet final. Judge Gould, who dissented, voted to grant panel rehearing. The two-judge majority responded by amending the opinion. The NBank petition on the original petition is still pending, and the opinion says explicitly that because the opinion was amended, new rehearing petitions can be brought as well. I spoke with Petitioner's counsel in Moses yesterday and have been assured that in part because of the rather strong reaction that this new opinion has gotten from the Federal Public Defender's offices, that he will be filing new petitions for rehearing if the first one is denied, as well as the cert petition. So my points are, first, that Moses is not yet final. It has not been finalized. It's not finding precedent yet, and it's going to be some time before we know whether it will, in fact, stand. Regardless of what happens in Moses, however, both the majority and the dissent in Moses agree that the Supreme Court does not have to decide the exact issue on the same set of facts, same exact facts for the Ninth Circuit to rule that a State court unreasonably applied a general principle that the Supreme Court has clearly established. The only question raised by Moses is whether the specific balancing test that the It does not answer the question whether using the hearsay rule to exclude evidence that Mr. Sanifor told a friend minutes after the shooting that it was done because the alleged victim was trying to kill him violates the clearly established Supreme Court precedent of, for example, Chambers v. Mississippi, that the exclusion of reliable hearsay evidence that's critical to the defense violates the defendant's constitutional right to present his defense, even if the hearsay rule itself is generally valid. In other words, as this Court knows, it is clearly established Supreme Court precedent that State evidentiary rules cannot be used to deprive a defendant of this Federal constitutional right to present a defense. And neither the majority nor the dissent in Moses disputes that principle, and neither of them answer the question of whether it was violated in this case, because Moses involved a different issue and different facts. But frankly, with or without a formal balancing test, I would think that many, if not all, of the factors in that test are things that are relevant and can be considered by this Court. For example, whether the excluded testimony was probative evidence on a major part of the defense is pretty much just a different way of asking whether the general legal principle was violated here. You've got a difference between Chambers and us. In Chambers, of course, you're trying to introduce a confession that somebody else made in a bar, basically. And you can't get the testimony of the declarant. Here, if it's hearsay, the problem with hearsay usually is that you can't get the original testimony. And here you did. Well, actually, Your Honor, I believe that Chambers v. Mississippi, which I was just re-reading as I was sitting here, does involve hearsay testimony, and it was excluded. And the Court explicitly said, we don't have to decide whether the hearsay rule is valid or invalid. We simply say that in this particular case, it had to come in. Because otherwise, it would prevent the defendant from presenting his defense. And that's what's happening here. And you're depending somewhat on the fact that it's very close to the event. I mean, if three days later, your client had said, well, you know, that was all self-defense. Well, no. You wouldn't be able to introduce that, even though it's exculpatory. Well, first of all, there's two levels of analysis here. The first is that, obviously, I disagree with the courts below as to whether or not it was qualified as an excited utterance and, therefore, was admissible in spite of the hearsay rule. But even if it were properly excluded under the hearsay rule, it would still violate Chambers v. Mississippi, Washington v. Texas, the other clearly established Supreme Court precedents that I cite in my brief, because it would have prevented him from making his defense for all the reasons I stated in my brief, because it was reliable. It was not to the police. It was not to somebody that he had a motive to lie to. It happened minutes after the shooting. I think the district court says 15 to 20 minutes. I think it's actually somewhere 10 to 20 minutes, according to the record. And it was essential to his defense. I guess I don't understand why it would be essential to have a, essentially, a self-serving statement. Well, I don't know that it was self-serving at that time, Your Honor. Again, this was very shortly after the united --- Well, why is it essential to his defense? Because self-defense is generally proved through the circumstances of the --- What happened in this case was very unusual. There was a hearsay statement. Half of it, the inculpatory half, was gotten in by the State through the testimony of a hearsay -- one hearsay declarant that would be Mrs. ---- I'm sorry, the female witness was Ms. Baylor. Baylor. And the second half of the statement was excluded, and that was the exculpatory half of the statement. And not only were they both hearsay, and one was admitted and one was excluded --- Well, an admission is technically not hearsay. Okay. Well, all right. They were both third parties testifying to what he said. But the prosecution actually called the hearsay declarant, Mr. Jones, as its own witness after getting a ruling that he could not be cross-examined on the exculpatory part of that same statement. And, in fact, the mere fact that Mr. Jones did not testify to that statement certainly would have raised a doubt in the jury's mind, certainly would have, you know, been ---- it would have certainly strongly implied that only the inculpatory part of the statement was made. So I think that there's a fundamental unfairness here in allowing in half the statement the inculpatory part but excluding the exculpatory. Was it all one statement? Yes. My understanding is it was all in one telephone call. And to Lester Jones. Yes. And the Ms. Baylor heard part of that but only testified to what she heard. The entire statement was heard by Mr. Jones. And I have 30 seconds left, so I'd like to give you some more. Thank you. May it please the Court, Justin Riley on behalf of the Warden. As opposing counsel has discussed, this Court obviously received my 28-J letter on Friday regarding Moses v. Payne. In that case, the Ninth Circuit, binding on this Court, by the way, as of a week and a half ago Friday, not final admittedly, but I know of no rule that declares it to be not binding. I'm not sure I hear every one of your musings. Okay. You might want to speak up a little more. Moses v. Payne is binding on this Court. I'm not aware of any rule that says otherwise, although admittedly, it's not final. Moses v. Payne changed the way the Circuit and actually the parties in this case have analyzed the issue by foreclosing the use of the five GIA factors, with all due respect to Your Honor for coming up with those. Sandifer argues that the State Court misapplied hearsay principles, but that's not enough for habeas relief here. Sandifer argues further that the State Court excluded crucial and relevant evidence to his defense, but that's still not enough according to a United States Supreme Court precedent. Moses v. Payne instructs, parroting some of the reasoning of the United States Supreme Court's plurality opinion in Montana v. Egelhoff, instructs that clearly established Supreme Court precedent on this issue only prohibits, I'm going to quote it so I get it exactly right, the application of exclusionary rules that prohibit crucial evidence having a critical effect on the trial with little or no justification. Moses also instructs that we focus on the rule rather than the State Court's discretionary application of the rule. Here it was a hearsay rule that excluded a portion of a statement the petitioner made to the witness. The justification for this rule is to exclude unreliable evidence. It is rationally, the goal of, I'm sorry, the wording of the rule is rationally related to its purpose. Moses v. Payne instructs us that our analysis ends here. It's true that Chambers recognizes that a series of... What do you understand the analysis to be under Moses v. Payne? Well, the clearly established Supreme Court precedent is, and I'm quoting from page 10 of Moses v. Payne, the evidentiary rules in those cases, the clearly established Supreme Court cases that they set forth, by their terms required the trial court to exclude crucial evidence that had a critical effect on the trial with little or no rational justification. And if you go through those cases, Crane v. Kentucky, for instance, we find that states are permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives the defendant of due process. Crane v. Kentucky instructs us that in the absence of valid state justification, rules of this sort violate the Constitution. If we have... How does that help? Pardon me? How does that help? Well, what we're doing is we're looking for, under Crane, we're looking for a valid state justification for the rule. That's all. It even if the evidence is crucial to the defense, if it's relevant to the defense, if we have a valid state justification, United States Supreme Court precedent doesn't... What's the justification here? Let's just... Okay. The justification here is reliability. Obviously, this was a self-serving statement, as Your Honors have recognized. Is your opposing counsel correct that this was all one statement? Arguably, yes. It never reached the jury. I shot the guy who he was trying to kill me. I shot the guy who was trying to kill me. No. If you read the Profford testimony by his name escapes me. I apologize. Jones. Jones. If you read the Profford testimony by Jones and the testimony given at trial by the eyewitness, they seem to be consistent, but the language is completely different. And one doesn't seem to be a continuation of the other. Importantly... Was it in the same phone call? Arguably, yes. What do you mean, arguably? Was it in the same phone call? Yes, it was. Okay. The remaining portions of the... Was there any interruption in the sequence, whatever words were used? We don't know. The witness, the eyewitness who actually... Jones was your witness, wasn't he? He was our witness. We didn't have him testify to, and it wasn't we didn't handle the, the Attorney General's office did not handle the case below. But we as a State... He was the State's witness. The State did not elicit any testimony from the conversation from Jones. As I understand it, a different witness testified. Pardon me? A different witness testified as to what she overheard. Is that right? Baylor. No. Baylor? I believe she testified. Yeah. That's... She testified that she heard Santifer saying, I just shot this fool. To Jones. What? She did. I, I, it's unclear whether or not she knew Jones was on the phone with Santifer, but Baylor testified that she heard Santifer say on a phone conversation, admitting to the shooting. Obviously, the language is a little harsh. But also saying... Baylor didn't hear anything else. It was a very short statement. She didn't hear him say... She heard nothing else. No. Okay. The remaining portions of that phone conversation were, let me back up a little bit. Jones proffered, there was a hearing where Jones testified that he would be willing to testify in front of a jury that there was an allegation of self-defense. I suggest reading the transcript. He was very limited as to what the phone conversation was about. He only said, I thought this guy, he testified that Santifer stated, I thought this guy was going to shoot me. I shot him. And that's it. That's all that he relayed from the conversation. He didn't know what day it occurred on. He didn't know how long the phone conversation went on. He didn't know that they had talked about anything else. All he knew was, I thought the guy was going to shoot me, says Santifer, and I shot him. Reliability was screaming. The reliability of the issue was screaming at the judge. Obviously, it was a self-serving statement. The witness who was going to proffer the testimony didn't know anything else other than, oh, yeah, it was self-defense. Didn't know anything else about the conversation. And the conversation, when the state called this witness, the remaining portions of the conversation were not elicited from him. The evidence of closing argument is Moses versus Payne, but all the more so. The rule of exclusion is rational to the goals of keeping the jury from being confused, time consumption with litigating a case not at issue, and excluding matters not in evidence. There's no United States Supreme Court precedent that constrains a state court to allow a defense attorney to testify in closing argument. Let me touch on a few of the other points in the hearsay exclusion rule. Okay, you've got about a minute and a half. Okay. Does the court have any questions at this point? I don't want to miss anything. The evidence was not even crucial. Remember that Moses versus Payne has set out a dual part test. Crucial evidence, and I'm paraphrasing, followed by no rational, no rationale to, I'm sorry. Self-defense in California is measured objectively. Santafer's self-serving statement was a subjective statement of his belief. The jury still would have to conclude that Santafer objectively believed that the victim was going to shoot him. That's what causes this evidence to be not crucial as required by Moses. Am I correct that he made this phone call not immediately after the shooting, but about 10 minutes or so after? The evidence shows between 10 and 20. Okay, thank you. During that time, during those 10 minutes after he shot the victim, he attempted to convey, I see I'm out of time. He attempted to convey to Baylor that she should hide the facts of the crime along with him. Thank you. Thank you. Your Honors, in my remaining 30-some seconds, I'd like to be very quick. First of all, I don't know whether when a decision of this Court that is not final becomes binding, but I do know that it's not final, and I also know that there is an intra-circuit conflict between Moses on the one hand and Perry, Miller, and Shia on the other hand. Secondly, as to what Mr. Jones' testimony, it begins at ER page 11. He did testify outside the presence of the jury. The record obviously will speak for itself, but I simply disagree that there was no other indicia of unreliability. Third, I'd like to say that the neither the Moses opinion nor anything else suggests that we have to say whether the hearsay rule is or is not constitutional, and that's obviously not an issue in this case. Even a constitutional rule of evidence can be unreasonably applied in such a way as to deny the defendant his right to a defense, and that's what happened here. And lastly, if you'll allow me, I'd like to say that the subjective versus objective dichotomy that the State suggests is important here because we have kind of a one-two punch with these two issues. In other words, the subjective belief of Mr. Santafer that the guy was trying to kill him was excluded when Mr. Jones' testimony was excluded. The objective support was excluded when his closing argument was limited. Ginsburg-McGillivray-Campbell, we understand. Thank you, Justice Alito. Alito, thank you, Your Honor. Ginsburg-McGillivray-Campbell, the case just argued is submitted for decision. Thank you.
judges: Schroeder, Canby, Hawkins